IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KENNY RICHARDSON,

       Plaintiff ,


    v.

HOWARD S. WRIGHT CONSTRUCTION CO,
a Washington corporation,

       Defendant/Third-Party
       Plaintiff,

    v.

AMERICAN STATES INSURANCE COMPANY,
a foreign corporation, and DON HERBST
PAINTING, INC., an Oregon corporation,

       Third-Party Defendants.

_____

CV-05-1419-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

1 - OPINION AND ORDER

## INTRODUCTION

On August 6, 2003, plaintiff, Kenny Richardson ("Richardson") was injured after falling from scaffolding while working as a painter for Don Herbst Painting Company ("Herbst") on a project at the Clatskanie Elementary School.  Defendant Third-Party Plaintiff, Howard S. Wright Construction Company ("Wright"), was the general contractor on that project and subcontracted with Herbst for painting services.  After his injury, Richardson filed a claim for workers' compensation benefits under Oregon law.  Richardson then filed this lawsuit against Wright in Columbia County Circuit Court, *Richardson v. Howard S. Wright Construction Company*, Case No. 05-2359, alleging a claim for negligence and a claim under Oregon's Employer Liability Act ("ELA"), ORS 654.305-.336.  Wright subsequently removed that action to this court, alleging diversity of citizenship under 28 USC § 1332(c).  A year later, on October 4, 2006, Wright filed a Third-Party Complaint against Herbst and its insurer, American States Insurance Company ("American States"), alleging that it was an "additional insured" under an endorsement to Herbst's liability insurance policy.

Richardson is a resident of Oregon.[1]  Wright is a Washington corporation with its principal place of business in King County, Washington.  American States is an Indiana insurance company, licensed to conduct the business of insurance in Oregon.  Herbst is an Oregon corporation.  The amount in controversy is greater than $75,000.  Therefore, this court has diversity jurisdiction under 28 USC § 1332(a).

///

---

[1]  "It is black letter law that, for purposes of diversity, '[r]esidence and citizenship are not the same thing.'" *Seven Resorts, Inc. v. Cantlen*, 57 F3d 771, 774 (9th Cir 1995), citing *Mantin v. Broadcast Music, Inc.*, 244 F2d 204, 206 (9th Cir 1957). However, here there is no evidence of any other citizenship.

All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

On February 2, 2007, American States and Herbst filed a Third Party Defendants' Motion for Summary Judgment Pursuant to FRCP 56 (docket #33), asserting that Herbst's agreement to insure Wright is void under Oregon law and that, even if not void, the "additional insured" endorsement does not cover Richardson's claims under Oregon law. On February 16, 2007, Wright filed a Cross Motion for Summary Judgment Against Third-Party Defendants (American States and Herbst) (docket #37). For the reasons that follow, this court concludes that Oregon law does invalidate Herbst's agreement to insure Wright, that American States may have a duty to indemnify Wright under the "additional insured" endorsement, but that American States has no duty to defend Wright against Richardson's allegations. In addition, Herbst is entitled to summary judgment as to the breach of contract claim.

## LEGAL STANDARDS

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 631 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id* (citation omitted). Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id* at 631.

## FACTS

### I. Richardson's Lawsuit

Wright was the general contractor for a repair and remodeling construction project at the Clatskanie Elementary School, in Columbia County, Oregon. In conjunction with this project, Wright subcontracted with Herbst to perform painting services.

On August 6, 2003, Richardson, a Herbst employee, fell from scaffolding at the project site and suffered significant injuries. He applied for and received workers' compensation benefits from Herbst's insurer. Richardson subsequently filed suit against Wright in Columbia County Circuit Court, alleging a claim for negligence and a claim for violating the ELA. In particular, the Complaint alleges that his accident was caused by Wright's negligence in failing to: (a) insure that all staging and staging equipment was safe; (b) properly supervise and maintain the safe placement of all staging and staging equipment; and (c) warn Richardson of the unsafe staging. Third-Party Complaint, Exhibit 1, ¶ 11. Wright then removed that suit to this court.

///

///

## II.  **The Subcontract**

The Wright/Herbst subcontract required that Herbst indemnify Wright for any liability

arising out of Herbst's work, as follows:

> T.1.  SUBCONTRACTOR agrees to defend, indemnify and hold
> Howard S. Wright Construction Co., CONTRACTOR and
> OWNER harmless from any and all claims, demands, losses, and
> liabilities to or by third parties arising from, resulting from or
> connected with services or work performed or to be performed
> under this SUBCONTRACT by SUBCONTRACTOR or
> SUBCONTRACTOR'S agents or employees, lower-tier
> subcontractors and suppliers, subject to the limitations provided
> below, and in any event to the fullest extent permitted by law.
>
> T.2. For work performed within the states of Washington or
> Oregon, where the Contract is governed by Washington or Oregon
> State laws, SUBCONTRACTOR'S duty to indemnify shall not
> apply to liability for damages arising out of bodily injury to persons
> or damage to property caused by or resulting from sole negligence
> of CONTRACTOR or CONTRACTOR'S agents or employees.
> SUBCONTRACTOR'S duty to indemnify CONTRACTOR for
> liability for damages arising out of bodily injury to persons or
> damage to property caused by or resulting from the concurrent
> negligence of (a) CONTRACTOR or CONTRACTOR'S agents or
> employees; and (b) SUBCONTRACTOR or
> SUBCONTRACTOR'S agents or employees, shall apply only to
> the extent of negligence of SUBCONTRACTOR or
> SUBCONTRACTOR'S agents, employees, lower-tier
> subcontractors and suppliers, or to such greater extent as may be
> permitted under applicable Washington or Oregon law. . . .
>
> T.6.  For work performed in the State of Oregon, where the
> Contract is governed by Oregon state laws, SUBCONTRACTOR
> specifically and expressly waives any immunity that may be
> granted it under the Worker's Compensation Law (ORS 656.001 to
> 656.794) to the extent permitted under such law.

*Id*, ¶ 6 & Exhibit 2, p. 2.

The subcontract also required that Herbst maintain a $2 million liability policy that,

among other things, named Wright as an "additional insured" for any such liability:

M.1. SUBCONTRACTOR shall maintain during the term of this SUBCONTRACT insurance coverages in the following minimum amounts and SUBCONTRACTOR shall, before commencing work under this SUBCONTRACT, furnish to CONTRACTOR, certificates of insurance with policy effective dates and except for Worker's Compensation, naming CONTRACTOR as an additional insured . . .

M.2. Insurance certificates shall further indicate that coverage includes contractual liability applicable to the indemnity provisions of this SUBCONTRACT and the amount of all related deductibles other than auto . . . . Liability policies furnished by SUBCONTRACTOR shall be primary to other liability policies which may be carried by CONTRACTOR and/or OWNER.

*Id.*

Pursuant to that requirement, Herbst obtained a "Liability Plus Endorsement" to its policy with American States. *Id*, ¶ 7 & Exhibit 3. The endorsement amends the policy's definition of "insured" to include persons and organizations shown in the Schedule or for whom Herbst is required by written contract to insure, subject to certain conditions. *Id*, Exhibit 3, pp. 1-2.

## III. American States' Policy

_____American States issued a commercial general liability policy to Herbst covering bodily injury or property damage arising from its work. Pursuant to the subcontract, that policy included the following "additional insured" endorsement:

The following paragraph is added to WHO IS AN INSURED (Section II):

5. Any person or organization shown in the Schedule or for whom you are required by written contract, agreement, or permit to provide insurance is an insured, subject to the following additional provisions:

\*          \*          \*

b. The person or organization added as an insured by this endorsement is an insured only to the extent that you are held liable due to:

\*          \*          \*

(2)  Your ongoing operations for that insured, whether the work is performed by you or for you;

         *            *           *

d. . . .  No coverage will be provided if, in the absence of this endorsement, no liability would be imposed by law on you.  Coverage shall be limited to the extent of your negligence or fault according to the applicable principles of comparative fault.

*Id*, Exhibit 2, p. 3.

American States issued a Certificate of Liability Insurance to Herbst, naming Wright as an "additional insured."  *Id*, Exhibit 2, p. 1.

## IV.  American States' Refusal to Represent Wright

Wright tendered defense of the Richardson lawsuit to American States under the "additional insured" endorsement, but American States refused that tender.  Wright then filed the Third-Party Complaint in this case, alleging breach of contract by American States for failing to defend and indemnify Wright against Richardson's claims pursuant to the "additional insured" endorsement (First Claim) and, in the event that Wright is not insured, breach of contract by Herbst for failing to obtain insurance as required by the subcontract (Second Claim).

## DISCUSSION

American States contends that Herbst's agreement to add Wright as an "additional insured" to its liability insurance policy is void under ORS 30.140.  Wright disagrees, contending that the "additional insured" endorsement obligates American States to defend and indemnify it in the Richardson lawsuit.  Alternatively, American States asserts that, even if the endorsement is not void, coverage is barred by the "additional insured" exclusion.  Wright responds that, read in context, the exclusion does not apply and provides no safe haven to American States.  For the reasons that follow, adding Wright as an "additional insured" to the policy is not void under

ORS 30.140 and the exclusion does not bar coverage for liability imposed on Wright for Herbst's fault. Therefore, Herbst did not breach its agreement to procure insurance for Wright. However, the allegations in Richardson's Complaint do not impose a duty to defend on American States. It is premature to determine whether American States has a duty to indemnify Wright.

**I. Whether ORS 30.140 Voids the Policy**

The parties dispute whether American States is liable to defend and indemnify Wright from Richardson's claims under ORS 30.140 which provides, in relevant part, as follows:

> (1) Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.
>
> (2) This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors.

The subcontract between Wright and Herbst requires Herbst to obtain liability insurance for Wright. American States contends that this provision is void under ORS 30.140(1) because it requires insurance coverage for bodily injuries "caused in whole or in part by the negligence" of Wright. This argument is rejected for several reasons.

Section M.1 of the subcontract requires Herbst to name Wright as an "additional insured" on its $2 million liability policy. Herbst did so.[2] However, both the subcontract and the policy limit the scope of the insurance provided to Wright as an "additional insured."

---

[2] Although Wright was not named on the Schedule of the endorsement, American States issued a certificate stating that Wright was listed as an additional insured "per form CG7635, attached." Affidavit of Leslie A. Kocher-Moar, Exhibit 2, p. 1. By virtue of this incorporation, Wright was effectively listed on the Schedule.

Section M.2 of the subcontract states that "[i]nsurance certificates shall further indicate that coverage includes contractual liability applicable to the indemnity provisions" of the subcontract.  Those indemnity provisions are set forth in Sections T.1 and T.2 of the subcontract which limit Herbst's duty to indemnity for work performed in Oregon to its sole negligence or the extent of its concurrent negligence.  The subcontract does not require Herbst to indemnify Wright for Wright's negligence.

The policy also limits the scope of insurance provided to an "additional insured." Paragraph 5(d) of the "additional insured" endorsement to the policy limits Wright's coverage "to the extent of your [Herbst's] negligence or fault according to the applicable principles of comparative fault."  It does not provide coverage for Wright's fault, in whole or in part.  These limitations are consistent with ORS 30.140.

Second, even if the language of the subcontract is sufficiently broad to require indemnification or insurance for injury caused in whole or in part by Wright, it is not void. Instead, it is only unenforceable in part.  *Hays v. Centennial Floors, Inc.*, 133 Or App 689, 695, 893 P2d 564, 567 (1995) ("ORS 30.140(2) voids the clause to the extent that its application would require Centennial to indemnify Authority for its own sole negligence").  Wright seeks only to enforce the contractual insurance clause to the extent it does not violate ORS 30.140, namely to obtain coverage for Herbst's negligence.  A contract clause should not be interpreted to render it unenforceable where the language may be logically construed in a manner which renders the contract legal and enforceable.  *See Walsh v. Schlecht*, 429 US 401, 408 (1977).

Third, this court previously confronted this issue and ruled contrary to the position asserted by American States and Herbst.  *Tudor Ins. Co. v. Howard S. Wright Constr. Co., et al*, Civil No. 04-480-ST, Findings and Recommendations dated Dec. 23, 2004 (docket #34), adopted

9 - OPINION AND ORDER

by Order dated Feb. 22, 2005 (docket #40) ("*Tudor* F&R").  Nevertheless, American States and

Herbst contend that this court misapplied an Oregon Supreme Court case, *Walsh Constr. Co. v.*

*Mut. of Enumclaw*, 189 Or App 400, 76 P3d 164 (2003), *aff'd* 338 Or 1, 104 P3d 1146 (2005),

and that, when correctly applied, *Walsh* mandates summary judgment in their favor.  This court

disagrees.

In *Tudor*, this court concluded that ORS 30.140(2) permits an agreement requiring a

subcontractor to obtain an "additional insured" endorsement indirectly indemnifying the general

contractor for the subcontractor's fault in causing injury to the subcontractor's employee.  In

*Walsh*, as noted in *Tudor*, the parties agreed that ORS 30.140(2) did not apply, presumably

because there was no possible fault by the subcontractor for its employee's injury.  *Walsh*, 189 Or

App at 406, 76 P3d at 167.  That was not the case in *Tudor* where the general contractor (Wright)

claimed that the subcontractor was at fault for the plaintiff's injuries.  *Tudor*, F&R, p. 21.  Thus,

the court was left to determine whether ORS 30.140(2) applied.  That is also the situation here.

As this court concluded in *Tudor*, "*Walsh* is no obstacle to finding that ORS 30.140(2)

applies" when fault by the subcontractor is alleged to have caused the injury, in whole or in part.

*Id* at 25; *also see Hoffman Constr. Co. v. Travelers Indem. Ins. Co.*, No. 05-456-AA (Nov. 28,

2005, docket #41).  Because this court discerns no reason to revisit *Tudor*, it rejects the argument

by American States and Herbst that the agreement by Herbst in the subcontract to provide

insurance for Wright is void.  This opens the door to application of ORS 30.140(2) for American

States to insure Wright for Richardson's injuries if they "arise out of the fault of [Herbst], or the

fault of [Herbst's] agents, representatives or subcontractors."

///

10 - OPINION AND ORDER

## II. __American States' Duty to Defend Wright__

The next question is whether Richardson has alleged a claim against Wright based on Herbst's negligence. "Whether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy." *Ledford v. Gutoski,* 319 Or 397,399, 877 P2d 80, 82 (1994) *(en banc)* (citation omitted). As more recently summarized by *Marleau v. Truck Ins. Exch.,* 333 Or 82, 91, 37 P3d 148, 153 (2001), "[a]n insurer has a duty to defend if the factual allegations of the complaint, without amendment, state a claim for any offense covered by the policy." Any ambiguity in the complaint as to whether the allegations could be covered must be resolved in favor of the insured. *Ledford,* 319 Or at 400, 877 P2d at 83. In short, resolving a challenge as to whether an insurer has a duty to defend requires a court to, in part, interpret the underlying lawsuit's pleadings as presented, and to reasonably determine whether the pleadings describe, or may describe, a covered loss. *See Abrams v. Gen. Star Indem. Co.*, 335 Or 392, 399-400, 67 P3d 931, 935-36 (2003).

Richardson's Complaint does not mention Herbst, let alone attribute any fault to Herbst. Instead, paragraph 6 alleges that Wright "was completely and solely responsible for maintaining all equipment of the staging area" and paragraph 7 alleges that Wright "was responsible for moving the stage and resetting the state each time it was moved [and] was also responsible for maintaining all aspects of the stage." In addition, paragraph 11 alleges that Wright, not Herbst, was negligent in one or more of the following particulars:

> a. Failing to insure that all staging and staging equipment was safe at all times;
>
> b. Failing to properly supervise and maintain safe placement of all staging and staging equipment; and
>
> c. Failing to warn plaintiff of unsafe staging.

11 - OPINION AND ORDER

Richardson's allegations are specifically directed only against Wright. Since Oregon workers compensation law is an employee's exclusive remedy against his employer, Richardson no doubt drafted his Complaint to avoid any mention of Herbst. Furthermore, Richardson has no legal basis to recover directly from Wright for the fault of Herbst, its independent contractor. *See Schaff v. Ray's Land & Sea Food Co., Inc.*, 334 Or 94, 45 P2d 936 (2002). In other words, Richardson can recover from Wright only by proving that Wright was at fault, at least in part, for causing his injuries.

However, Wright contends that Herbst was at least partly to blame for Richardson's injuries. In that regard, Wright points to the allegations in its Answer that Richardson's injuries were caused by his own negligence or by Herbst's negligence. Defendant's Answer (docket #4), ¶¶ 3-4. Wright also points to provisions of it Scaffolding Agreement with Herbst, which places responsibility for inspecting the scaffolding on Herbst, and to testimony by Richardson, which indicates that he did in fact inspect the scaffolding on the day he was injured. Kocher-Moar Aff, Exhibits 4 and 5, pp. 3-14. In other words, Wright argues that Richardson's injury arose out of Herbst's operations for which Herbst was at least partially responsible, contrary to the allegations in Richardson's Complaint.

With respect to the duty to defend, this court cannot consider the allegations in Wright's Answer, the provisions of the Scaffolding Agreement, or Richardson's testimony because they are outside the "eight corners" of the Complaint and policy. Citing *Valley Ind. v. Scott Fetzer Co.*, 113 Or App 349, 832 P2d 1262 (1992), Wright argues that the "eight corners" rule is subject to an exception when there is compelling evidence of coverage. However, *Valley Ind.* quoted *Casey v. Nw. Sec. Ins. Co.*, 260 Or 485, 491 P2d 208 (1971), for the proposition that the rules apply "only 'in the absence of any compelling evidence of *no* coverage.'" *Id*, 113 Or App at 353,

12 - OPINION AND ORDER

832 P2d at 1264 (emphasis added).  The court found it unnecessary to decide the opposite issue

presented by Wright whether information outside a complaint may give rise to a duty to defend.

Instead, it found that "the evidence relied on here, namely, the deposition falls well short of the

'compelling evidence' that . . . must be present to require an indemnitor to defend

notwithstanding the absence of anything in the complaint that discloses the duty." *Id*, 113 Or

App at 354, 832 P2d at 1265.

Furthermore, "[t]he continued vitality of *Casey* after *Ledford* is uncertain:  If an insurer is

limited to the pleadings and the policy in determining whether to defend, it is not clear how an

insurer can look to 'extrinsic' knowledge . . .  to refuse a tender of defense."  *American Cas. Co.*

*v. Corum*, 139 Or App 58, 65-66, 910 P2d 1151,1155, *adhered to on reconsideration*, 141 Or

App 92, 917 P2d 39 (1996) (footnotes omitted).  *Casey* involved a lack of coverage that had been

"uncontrovertibly" established by prior criminal convictions.  *Casey*, 260 Or at 492, 491 P2d at

211.  Even assuming that *Casey* states an exception to *Ledford's* general rule, Wright has

submitted no evidence that incontrovertibly establishes Herbst's liability.  It has not presented

prior criminal convictions, as in *Casey*, or even findings by a state administrative agency, as in

*Tudor*.  Instead, it has presented only some deposition testimony which does not rise to the level

of compelling evidence.

Following the lead of *Tudor* and *Hoffman Constr. Co.*, it is tempting to find that

Richardson's allegations are ambiguous as to whether Richardson's injuries arose out of Herbst's

operations for Wright.  Judge Marsh found ambiguous allegations as to Wright's duty to provide

a safe workplace which could be reasonably be interpreted to include the subcontractor for

playing a role when disassembling the crane that injured its employee.  *Tudor*, Order dated Feb.

18, 2005, p. 4 (docket #40).  Similarly, Judge Aiken found ambiguous the allegations against the

general contractor which appeared to be premised upon duties of general supervision and failed to allege who was actually responsible for the temporary steps that cause the injury. *Hoffman Constr. Co.*, Opinion and Order dated Nov. 28, 2005, pp. 9-10 (docket #41). Here, in contrast, the allegations point only to Wright as the party "completely and solely responsible" for the staging that caused Richardson's injuries. There is no hint of any fault by Herbst. Therefore, the allegations of the Complaint cannot be construed to impose a duty on American States to defend Wright.

### III. American States' Duty to Indemnify Wright

Wright also seeks indemnity from American States for Richardson's claims. "The duty to indemnify is independent of the duty defend" and, even though there may be no duty to defend, "based on the allegations in the initial complaint, the facts proved at trial on which liability is established may give rise to a duty to indemnify if the insured's conduct is covered." *Ledford*, 319 Or at 403, 877 P2d at 84, citing *City of Burns v. Nw. Mut.*, 248 Or 364, 368-69, 434 P2d 465, 468 (1967).

At this point, no trial has been held and no damages have been awarded to Richardson. However, American States seeks summary judgment on the basis that, even if Wright is an "additional insured" under the endorsement, it has no duty to indemnify Wright because coverage is precluded by the following exclusion in that endorsement:

> No coverage will be provided if, in the absence of this endorsement, no liability would be imposed by law on you. Coverage shall be limited to the extent of your negligence or fault, according to the applicable principles of comparative fault.

The "you" and "your" in this exclusion appear to refer to Herbst, the insured. Relying on the first sentence of that clause, American States contends that Richardson's claim against

Wright is not covered because Herbst ("you") is not liable for Richardson's injuries due to the application of Oregon's workers' compensation laws. Under Oregon workers' compensation law, Herbst cannot be held liable for Richardson's injury. ORS 656.018(1)(a).

By relying only on the first sentence of the exclusion, American States ignores the import of the second sentence. When read as a whole, this exclusion, appears to only limit coverage consistent with ORS 30.140 and *Walsh*. The second sentence limits coverage to Wright as an "additional insured" to the extent of "your [Herbst's] negligence or fault, according to the applicable principles of comparative fault." In other words, coverage is provided to Wright only for injuries caused by Herbst and also limits coverage to the percentage of fault assigned to Herbst. This is similar to the statutory language which forbids any provision in a construction agreement to require indemnity of the general contractor for damages caused in whole or in part by its own negligence, but allows the subcontractor to indemnify the general contractor for damage attributable to the subcontractor's own fault.

In addition, the second sentence creates an internal ambiguity. If the first sentence is read as urged by American States, then the exclusion would bar coverage whenever the injured party is an employee of the subcontractor. However, the second sentence says that American States will provide coverage to the extent of Herbst's negligence or fault. To that extent, the second sentence conflicts with the first sentence by which American States seeks to exclude coverage. The only way to reconcile the two sentences is to conclude that the second sentence, unlike the first sentence, applies to non-employees of the subcontractor. If that was the intent of the exclusion, it was not clearly expressed. At best, the exclusion is ambiguous.

To the extent that the exclusion is ambiguous, it must be construed against American States. *See Shadbolt v. Farmers Ins. Exch.*, 275 Or 407, 551 P2d 478 (1976) (ambiguous policy

terms construed against the insurer); *Borglund v. World Ins. Co.*, 211 Or 175, 181, 315 P2d 158, 161 (1957) (ambiguous term construed "in the sense in which the insured had reason to suppose it was understood").  Based on the terms of the subcontract which gave rise to the "additional insured" endorsement, it was certainly reasonable for Wright to construe this exclusion as a *Walsh* limitation.  Therefore, it must be construed against American States.

Whether or not this exclusion applies will depend on whether Wright can prove, as a defense to Richardson's claims, that Herbst is liable, in whole or in part, for causing Richardson's injuries.  Such a determination will have to await further development of the facts. It is premature to make that determination at the summary judgment stage.

## IV.  Breach of Contract by Herbst

Wright also seeks summary judgment on its breach of contract claim against Herbst for failing to procure insurance consistent with the terms of the subcontract.   It argues that if Richardson's claim is not covered by the American States policy, then Herbst breached its contractual obligation to procure insurance for Wright's benefit against claims such as Richardson's.

As discussed above, Herbst's policy with American States may cover Richardson's claims against Wright to the extent of Herbst's fault.  In addition, that policy coverage is fully consistent both with the indemnity provisions of the subcontract and with ORS 30.140.  Because Herbst obtained the insurance coverage for Wright to the extent required by the subcontract and Oregon law, it cannot be found liable for breaching the subcontract.  Accordingly, Herbst is entitled to summary judgment as to the breach of contract claim.

///

///

16 - OPINION AND ORDER

## **ORDER**

For the reasons stated above, American States' and Herbst's Third Party Defendants'

Motion for Summary Judgment Pursuant to FRCP 56 (docket #33) is GRANTED to American

States as to its duty to defend, DENIED to American States as to its duty to indemnify, and

GRANTED to Herbst as to the breach of contract claim (Second Claim).  Wright's Cross Motion

for Summary Judgment Against Third-Party Defendants (American States and Herbst) (docket

#37) is DENIED.

DATED this 18th day of May, 2007.


_/s/ Janice M. Stewart _____
Janice M. Stewart
United States Magistrate Judge